## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Danica Petty, et al.,

|                              |                              |
|------------------------------|------------------------------|
| Plaintiffs,                  | Case No. 21-cv-11328         |
| v.                           | Judith E. Levy               |
|                              | United States District Judge |
| Garden City Public Schools, et al., |                       |
| Defendants.                  | Mag. Judge Anthony P. Patti  |

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT GERALD SHIENER, M.D. [128]

Before the Court is Defendants Garden City Public Schools, Derek Fisher, James Bohnwagner, Wayne Westland Community School District, Jill Simmons, Kimberly Doman, Matthew Provost, and Emily Hawthorne's Motion to Strike Plaintiffs' Expert Gerald Shiener, M.D. ("Motion to Strike") (ECF No. 128.) For the reasons set forth below, the Court grants in part and denies in part the Motion to Strike.

## I.    Background

This case involves accusations that minor children with visual impairments who were students in two public school districts in

Michigan, were subject to sexual abuse. The factual background is set forth in a previous Opinion and Order in this case. (ECF No. 183.)

Plaintiffs offer Dr. Gerald Shiener as an expert to provide "causation and damages testimony relating to the psychiatric issues" the children face as a result of the alleged sexual abuse. (ECF No. 136, PageID.5290.) Dr. Shiener provided reports regarding minor Plaintiffs Z.F. Doe, P.H. Doe, M.S. Doe, and K.B. Doe. (*See* ECF Nos. 128-3, 128-4, 128-5, 128-6.) Defendants seek to exclude his testimony. (ECF Nos. 128, 138, 139.) Plaintiffs responded in opposition, (ECF Nos. 136, 141), and Defendants replied. (ECF No. 153.)

Plaintiff Amanda Wilhelm, as next friend of M.S. Doe, also requests that the Court accept a notarized affidavit from Dr. Shiener in place of a previously filed affidavit, which lacked notarization. (ECF No. 151.) She explains that "technical difficulties encountered during the remote notarization process" prevented prior notarization and asks that the Court accept the notarized affidavit, because Defendants "will not be prejudiced and the interests of justice will be served by granting the requested extension." (*Id.* at PageID.5796–5797.) She filed the request less than a week after the unnotarized affidavit was submitted.

Defendants have not objected. Even when parties have objected to such requests, courts have viewed the need to replace an unnotarized affidavit as a "minor technical deficiency . . . curable by the subsequent filing" and have found there to be no prejudice in accepting the notarized affidavit for consideration. *Crowley v. St. Rita's Med. Ctr.*, 931 F. Supp. 824, 833 (N.D. Ohio 2013); *see also Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001). The content of the notarized affidavit, (ECF No. 152), is identical to the content of the affidavit filed in the earlier response, (ECF No. 141-5), except for it being notarized. There is no prejudice to Defendants in accepting this notarized affidavit. Accordingly, the Court grants the motion to accept Dr. Shiener's notarized affidavit. (ECF No. 151.)

## II.   Legal Standard

Federal Rule of Evidence 702 requires that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Supreme Court explained in *Daubert v. Merrell Pharmaceuticals, Inc.*, Rule 702 imposes a "gatekeeping" obligation on the courts to ensure that scientific testimony "is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

Under Rule 702, an expert witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Although this requirement has always been treated liberally, . . . that liberal interpretation of this requirement 'does not mean that a witness is an expert simply because he claims to be.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (quoting *In re Paoli RR Yard PCB Litig.,* 916 F.2d 829, 855 (3d Cir. 1990)); *see also Zuzula v. ABB Power T & D Co., Inc.*, 267 F. Supp. 2d 703, 713 (E.D. Mich. 2003) ("The court's investigation of qualifications should not be onerous or inordinately exacting, but rather must look to underlying competence, not labels. '[T]he expert need not have complete knowledge about the field in

4

question, and need not be certain. He need only be able to aid the jury in resolving a relevant issue.'" (quoting *Mannino v. Int'l Mfg. Co.,* 650 F.2d 846, 850 (6th Cir. 1981)). When assessing a proposed expert witness's qualifications, "courts do not consider the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (cleaned up) (quoting *Berry v. City of Detroit,* 25 F.3d 1342, 1351 (6th Cir. 1994)).

In *Daubert*, the Supreme Court provided a non-exclusive list of factors courts may consider when evaluating reliability: (1) whether the theory or technique at the basis of the opinion is testable or has been tested, (2) whether it has been published and subjected to peer review, (3) what the known error rates are, and (4) whether the theory or technique is generally accepted. *Daubert*, 509 U.S. at 593; *see also In re Scrap Metal*, 527 F.3d 517, 529 (6th Cir. 2008). Not every factor needs to be present in every instance, and courts may adapt them as appropriate for the facts of an individual case. *Kumho* 526 U.S. at 150.

"[R]ejection of expert testimony is the exception, rather than the rule." *United States v. LaVictor,* 848 F.3d 428, 442 (6th Cir. 2017)

5

(quoting *In re Scrap Metal*, 527 F.3d at 529–30)). And the burden is on Plaintiffs to show by a "preponderance of proof" that the proffered expert meets the standards of Rule 702 as interpreted by *Daubert*. *Pride*, 218 F.3d at 578 (quoting *Daubert*, 509 U.S. at 592 n.10).

### III.   Analysis

Defendants argue that Dr. Shiener is not qualified to offer his opinions and that his opinions are unreliable.

### A.   Qualifications

Defendants contend that "because Plaintiffs were between 8 and 13 years old at the time of the incidents, and between 12 and 16 years old at the time of Dr. Shiener's evaluation, any opinion on their psychiatric states must be performed by someone with child or adolescent psychiatric expertise." (ECF No. 128, PageID.3351.) They argue that Dr. Shiener is not qualified to offer opinions about "the child psychiatric issues" at issue in this case. (*Id.* at PageID.3353.)

Dr. Shiener has a B.A. in psychology from Wayne State University and an M.D. from Michigan State University. (ECF No. 128-12, PageID.3443.) He completed a psychiatry residency at Sinai Hospital in Detroit the late 1970s. (*Id.* at PageID.3444.) He has held a variety of

faculty and hospital appointments related to psychiatry over the years. (*See id.* at PageID.3444–3446.) In addition, he has board certifications in several areas of psychiatry. (*See id.* at PageID.3446–3447.)

Defendants admit that Dr. Shiener has a broad variety of qualifications related to psychiatry, but they object that his specific experience with child psychiatry is limited. (ECF No. 128, PageID.3347–3349.) That, they assert, renders him unqualified to render an opinion about Plaintiffs, who were minor children at the relevant time. (*Id.* at PageID.3352 ("Because of the special considerations and challenges involved in treating children, professional organizations and others widely recognize that child and adolescent specialists should deal with children's psychiatric needs.").)

Plaintiffs respond that Dr. Shiener has sufficient qualifications to opine about child victims of sexual abuse. (ECF No. 136, PageID.5288 ("Dr. Shiener has ample experience in diagnosing and treating children who are victims of sexual assaults.").) They point to the following experience as evidence of Dr. Shiener being qualified to evaluate children:

7

- holding the position of Chief of Psychiatry at DMC Sinai-Grace Hospital, a Level II Trauma Center, where he worked with child- and adolescent-patients that had been sexually abused;

- undergoing six months[1] of training during his residency where he learned about child psychiatry;

- and being appointed to the Clinic for Child Study Advisory Committee by the Wayne County Circuit Court in 2016, which is "responsible for providing mental health services to juveniles."

(ECF No. 136, PageID.5288.)

Defendants reply that the Court should deem this experience and training inadequate to qualify Dr. Shiener to offer opinions in this case. With respect to Dr. Shiener's training during his residency, Defendants argue that it was "46 years ago" and that the majority of his work did not involve forensic psychiatry or work with children and adolescents. (ECF No. 153, PageID.5837–5838.) They also question whether his work on the Advisory Committee involves "treatment, evaluation, or diagnosis of minors." (*Id.* at PageID.5840.)

---

[1] During a deposition in a separate case, Dr. Shiener stated that his residency was five months long. (ECF No. 128-13, PageID.3499.)

8

Defendants cite no case that supports the contention that a court should discount a proposed expert's training because it took place a long time ago at the start of a lengthy career. With respect to Defendants' reference to the percentage of time Dr. Shiener spends with juvenile patients, a deposition Defendants cite includes Dr. Shiener affirming that counseling minors is part of his work. (ECF No. 128-14, PageID.3503.) He stated that, in his practice, he encountered cases of abuse from "time to time." (*Id.*) In another deposition, he stated that forensic psychiatry was "a small percentage of [his] practice" in 2008–2009 and that it "may have been about ten percent" of his practice. (ECF No. 128-13, PageID.3464.) More recently, a court noted that "[f]or nearly 50 years, Dr. Shiener has evaluated and treated psychiatric patients, including minors." *Kaiser v. Jayco, Inc.*, No. 20-cv-12903, 2022 WL 856155 at *4 (E.D. Mich. Mar. 22, 2022).

Plaintiffs are correct that it is not necessary for Dr. Shiener to have spent the majority of his time focused on child psychiatry to offer an opinion that will help a jury consider "how the sexual assaults psychiatrically impacted the minor children [Plaintiffs]." (ECF No. 136, PageID.5290.) Instead, he must be qualified to offer such an opinion by

9

"knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Dr. Shiener has received formal training in the psychiatric treatment of minors, and in addition, he has experience treating this population, including with respect to sexual abuse. (ECF No. 136, PageID.5288.) That is more than "simply . . . claim[ing] to be" an expert or being offered as a generic expert without qualifications to opine about the specific questions at issue. *Pride*, 218 F.3d at 577 (quoting *In re Paoli RR Yard PCB Litig.*, 916 F.2d at 855). His qualifications are sufficient to meet the "liberal" standard of this requirement set forth by the Sixth Circuit. *Id.*

### B.   Reliability

Defendants also assert that Dr. Shiener's opinions are speculative and unreliable. They contend that he failed to adequately review Plaintiffs' medical and school records, relied on reports from their mothers, and failed to use accepted, objective methodologies. (ECF No. 128, PageID.3355–3356.) They argue that Dr. Shiener uses an assessment approach that has been "abandoned." (*Id.* at PageID.3360.) Defendants also argue that he ignored alternative potential causes of Plaintiffs' injuries. (*Id.* at PageID.3356.)

10

i.      *Sufficient Facts and Data*

First, Defendants assert that Dr. Shiener's opinions are speculative and unsupported rather than being grounded in "sufficient facts or data." Fed. R. Evid. 702(b). "A district court is not required to admit expert testimony that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001) (cleaned up). The Sixth Circuit has held that an expert may not rely on "alternative facts." *United States v. Lang*, 717 F. App'x 523, 535 (6th Cir. 2017). Further,

> [a]lthough Rule 702 does not require an expert to consider *all* the facts and data available, it does require the factual basis of his opinion to be *sufficient*. Fed. R. Evid. 702. Consequently, an expert may not be permitted to testify to the jury when his opinion rests only on facts that "plainly contradict" undisputed evidence. *Greenwell*, 184 F.3d at 498. Therefore, the question is whether, in light of the record as a whole, we are firmly convinced that the record plainly contradicts [an expert's] factual basis. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528.

*Id.* at 536. An expert's opinion can also be excluded where the expert fails to account for contrary evidence while admitting that doing so is improper. *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin &*

11

*Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345–46 (6th Cir. 2024) (excluding an expert's opinion based on a single study where that study did not support the expert's opinion, and several other studies presented competing conclusions that the expert ignored without justification).

Defendants argue that Dr. Shiener ignores a variety of evidence, but they do not establish that his conclusions rely on alternative facts or that his conclusions are plainly contradicted by the evidence. They do point out oversights by Dr. Shiener. (*See, e.g.*, ECF No. 128, PageID.3343 (asserting that Dr. Shiener misstates the facts with respect to P.H. Doe's surgeries).)[2]

Dr. Shiener relied on a variety of evidence: depositions and police reports, interviews with Plaintiffs conducted by others (for Z.F. Doe, P.H. Doe, and K.B. Doe), educational records (for Z.F. Doe, P.H. Doe, and K.B. Doe) a psychiatric examination by another doctor (for Z.F. Doe, P.H. Doe, and K.B. Doe), and some medical records (for M.S. Doe). He conducted

---

[2] Plaintiffs do not respond to this argument regarding P.H. Doe's surgeries, and Defendants provide reason to believe Dr. Shiener is mistaken. (ECF No. 128-10, PageID.3429.) Therefore, he may not assert that P.H. Doe's last surgery was in 2010, nor may he present opinions that rely on that mistaken factual assertion.

psychiatric evaluations of Plaintiffs and obtained "collateral history" from their mothers. (*See, e.g.*, ECF No. 128-5, PageID.3392.)

Relying on such facts and data, as a general matter, is sufficient under *Daubert* and Rule 702. Courts have held that when an expert conducts their own evaluations, it is not always necessary to review an individual's medical records to provide an admissible opinion. *Fields v. Ashford*, 636 F. Supp. 3d 772, 779–80 (E.D. Mich. 2022). Parent interviews are also a valid source of data. *See In re Flint Water Cases*, No. 17-10164, 2021 WL 5769168, at *5 (E.D. Mich. Dec. 6, 2021). There is not a general basis to exclude Dr. Shiener's opinions as lacking a foundation in sufficient facts and data.

### ii.    *Reliable Principles and Methods*

Defendants also argue that Dr. Shiener does not apply a reliable methodology in his reports. They contend that "Dr. Shiener fails to cite to a single theory or publication that support [sic] any of his conclusions and did not identify how he reached his conclusions, or the methods used." (ECF No. 128, PageID.3357.) They argue that he provides generic descriptions of Plaintiffs, which do not impact his analyses and that he relies on a multi-axial assessment approach that was eliminated from the

13

most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). (*Id.* at PageID.3343–3344.)

In response, Plaintiffs provide a brief discussion of Dr. Shiener's methodology, as well as an affidavit from Dr. Shiener. Plaintiffs state:

> Dr. Shiener conducted his own forensic evaluation and met with the minors and their parents and obtained pertinent information (including medical) that he required to formulate his opinions. Dr. Shiener used his education, training, and experience of nearly 46 years as a forensic psychiatrist in formulating his opinions. Dr. Shiener further used DSM IV multi-axial reporting criteria to help the jury and/or non-psychiatric audience understand his opinions.

(ECF No. 136, PageID.5292.) Dr. Shiener's affidavit also references his education, training, and experience and asserts that his reliance on a previous edition of the DSM is appropriate, because it will be helpful to the jury and, regardless, his clinical judgment "takes priority over any" criteria from such a manual. (ECF No. 152, PageID.5803–5804.)

The discussion sections of Dr. Shiener's reports are very similar for each Plaintiff; they contain parallel language and conclusions in many respects.[3] In each report, he concludes that "[p]osttraumatic Stress

---

[3] Defendants note "nearly identical" language or descriptions in Dr. Shiener's reports for each Plaintiff. (ECF No. 128, PageID.3343, 3345.) That could be interpreted as evidence of Dr. Shiener using boilerplate language rather than doing

Disorder ["PTSD"] with secondary depression" is present. (*See, e.g.*, ECF No. 128-3, PageID.3379.) He states that "[t]ypical post-traumatic reactions involve reliving the experience through nightmares and flashbacks, developing panic reactions when exposed to triggers that are reminders of the trauma, becoming irritable, easily startled, and socially withdrawn, intolerant of high stimulus environments." (*Id.* at PageID.3380.) In his report regarding Z.F. Doe, for example, he notes reports of "irritability," describes a depressive mood during his interview with her, and notes her reports of "disturbed sleep" and nightmares. (*Id.* at PageID.3377–3378.) He also notes that Z.F. Doe's mother describes other symptoms consistent with Dr. Shiener's description of the symptoms of PTSD. (*Id.* at PageID.3380.) While Dr. Shiener's reports provide some explanation for his conclusions, he does not cite academic literature in support of his conclusions. The briefing and Dr. Shiener's

---

a thorough and individualized analysis. It could also be a product of the similar abuse Plaintiffs allege they experienced, as well as other overlapping characteristics and conditions. Neither party offers evidence that resolves this question in their favor. While Defendants raise a concerning issue, what is relevant is not the repetitiveness of Dr. Shiener's reports but whether they comply with the requirements of Rule 702 and *Daubert*. Accordingly, the Court will focus on that substantive question rather than considering that certain language is repeated in Dr. Shiener's reports.

affidavit clarify that he is relying on the DSM-IV, however. (ECF No. 136, PageID.5292; ECF No. 152, PageID.5804.)

Dr. Shiener offers diagnostic opinions, multiaxial assessments, opinions about causation, and opinions about prognosis and treatment. For the reasons set forth below, only Dr. Shiener's diagnoses of Plaintiffs are admissible.

### a.    Legal Standard

To be admissible, an expert's opinion must be "the product of reliable principles and methods" that are reliably applied to "the facts of the case." Fed. R. Civ. P. 702. Reliability is not the same thing as "absolute certainty." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010). The key question for courts is if an expert's opinion is grounded in scientific procedures, which involves considering whether it is "supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. The Sixth Circuit sets forth that

> "[a]n expert opinion must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir. 2005). . . . Under Rule 26(a), a "report must be complete such that opposing counsel is not forced to depose an

expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 n.6 (7th Cir. 1998) (citing *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir. 1995)). "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.*

*R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010).

### b.    Diagnoses and Multiaxial Assessments

To start, there is the question of Dr. Shiener's reliance on a previous edition of the DSM. The DSM-V was published in 2013, *Lopez ex rel Ilarrava v. CSX Transp., Inc.*, No. 14-cv-257, 2021 WL 11889869, *3 n.1 (W.D. Penn. Aug. 19, 2021), and the DSM-IV was phased out shortly thereafter. *Hughes v. Colvin*, No. 14-C-1883, 2015 WL 2259833, at *10 n.2 (N.D. Ill. May 12, 2015). This issue arises with respect to his diagnosis of PTSD based on the DSM-IV, as well as his reliance on multiaxial assessments, a feature of the DSM-IV that was phased out in the DSM-V. For the reasons set forth below, his diagnostic opinions are admissible, but his multiaxial assessments are not.

17

With respect to Dr. Shiener's PTSD diagnoses, although he does not enumerate the DSM-IV criteria in his report, his analysis covers the substance of the diagnostic criteria for PTSD outlined in the DSM-IV. *See Gastineau v. UMLIC VP LLC*, No. 04–cv–063, 2008 WL 2498102, at *2 n.1 (S.D. Ind. 2008) (quoting the diagnostic criteria from the DSM-IV). Further, one court has admitted Dr. Shiener's diagnosis of PTSD based on his "critical yet informed approach to the DSM" that did not strictly adhere to the DSM, because he relied on "decades of experience as a psychiatrist, extensive knowledge of the PTSD literature, and personal observations of [the individual's] behavior." *Kaiser*, 2022 WL 856155, at *6–7.

The question is whether Dr. Shiener's reliance on the previous edition of the DSM precludes the admission of his diagnostic opinions. While there are differences between the DSM-IV and DSM-V when it comes to diagnosing PTSD, there is significant overlap between the two editions such that a PTSD diagnosis based on the criteria in the DSM-IV likely approximates a PTSD diagnosis based on the DSM-V. *Thuesen v. Lumpkin*, No. 20-cv-852, 2024 WL 1468366, at *29 n.24 (S.D. Tex. Mar. 31, 2024) (citing Anthony J. Rosellini, et al., *Approximating a DSM-5*

*Diagnosis of PTSD Using DSM-IV Criteria*, 32 Depression & Anxiety 493, 494 (2015)). The fact that the DSM has been updated does not—on its own—indicate that Dr. Shiener's methods lack reliability with respect to diagnosing Plaintiffs with PTSD. That is especially so when there is evidence that his methods approximate the updated DSM-V Defendants argue is authoritative. (ECF No. 153, PageID.5840.) Relying on the DSM-IV for a PTSD diagnosis is a sufficiently reliable methodology to pass muster under Rule 702 and *Daubert*.

Defendants' objection to Dr. Shiener's reliance on the DSM-IV also involves objections to his use of the "multiaxial assessment approach," which was abandoned in the DSM-V. (ECF No. 128, PageID.3360.) Multiaxial assessments under the DSM-IV involve several areas of assessment. *Rask v. Astrue*, No. 10-cv-01082, 2011 WL 5546935, at *3 n.3 (D. Or. Nov. 14, 2011) ("Each axis 'refers to a different domain of information that may help the clinician plan treatment and predict outcome.' Axis I refers to clinical disorders; axis II to personality disorders; axis III to general medical conditions; axis IV to psychosocial and environmental problems; and axis V to global assessment of functioning." (citations omitted)). Elements of multiaxial assessment

that lacked conceptual "clarity" led to the abandonment of the multiaxial assessment system in the DSM-V. *Higareda v. Colvin*, No. 15-cv-3135, 2016 WL 6078299, at *10 n.3 (D. Neb. Oct. 17, 2016) (discussing issues with axis V, the global assessment of functioning).

Plaintiffs argue that Dr. Shiener's use of this system is an exercise of clinical judgment. (ECF No. 136, PageID.5292.) Indeed, the DSM "is not a cookbook" that experts must follow in a step-by-step fashion. *In re Flint Water Cases*, 2021 WL 5769168, at *4 (citing *State v. Charada T.*, 106 N.Y.S.3d 725, at *20 (N.Y. Sup. Ct. 2018)). However, Dr. Shiener asserts without explanation that his reliance on the DSM-IV will, in his judgment, aid the jury's understanding. (ECF No. 152, PageID.5804.) Plaintiffs do not explain why multiaxial assessment will assist the jury, nor do they explain why it is reliable despite being abandoned in the DSM-V. Such a demonstration is Plaintiffs' burden. Fed. R. Civ. P. 702. Because they have not met it with respect to Dr. Shiener's multiaxial assessments, he is not permitted to frame his opinion in those terms.

In precluding Dr. Shiener from using multiaxial assessment in his opinions, the Court does not preclude him from presenting conclusions that are otherwise supported by facts and based on reliable methods. For

20

instance, when performing a multiaxial assessment, PTSD is a clinical disorder that falls under Axis 1. (ECF No. 128-3, PageID.3379.) Dr. Shiener's overall multiaxial assessment of Plaintiffs should not be confused with his specific diagnosis that Plaintiffs have PTSD. Whatever problems led to the abandonment of the DSM-IV's multiaxial assessment system do not impact the diagnosis of specific clinical disorders like PTSD. That latter diagnosis, as set forth above, is admissible. So too can Dr. Shiener testify that Plaintiffs have visual impairments, which he categorizes under Axis III, as well as other conditions that are established in the record. (*See, e.g.*, *id.*) He is, however, precluded from presenting his opinions in a format—namely multiaxial assessment— that Plaintiffs have failed to establish is a reliable methodology under the applicable standards.

### c.   *Causation Opinions*

Defendants also object to Dr. Shiener's opinion that Plaintiffs' psychiatric diagnoses arose from sexual abuse, arguing that his opinions on this issue do not address any "other external circumstances," in addition to being conclusory and unsupported. (ECF No. 128, PageID.3356–3357.)

To evaluate expert opinions about etiology, meaning the cause or origin of a condition, courts in the Sixth Circuit consider the following questions:

> (1) Did the expert make an accurate diagnosis of the nature of the disease? (2) Did the expert reliably rule in the possible causes of it? (3) Did the expert reliably rule out the rejected causes? If the court answers "no" to any of these questions, the court must exclude the ultimate conclusion reached. *See Best v. Lowe's Home Ctrs., Inc.,* 563 F.3d 171, 179 (6th Cir. 2009).

*Tamraz*, 620 F.3d at 674. An expert need not rule out "all other possible causes of the injury" for their opinion to be admissible. *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 390 (6th Cir. 2000). However, "[t]he '*ipse dixit* of the expert' alone is not sufficient to permit the admission of an opinion," including with respect to the three questions set forth above. *Tamraz*, 620 F.3d at 671 (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).

For each Plaintiff, Dr. Shiener states as follows: "[a] careful review of her psychosocial history reveals no other factors capable of [causing her symptoms] other than a reaction to a sexual boundary violation such as she has described. Her symptoms are consistent with that formulation." (*See, e.g.*, ECF No. 128-3, PageID.3380.) Defendants point

22

out a variety of other factors that they contend Dr. Shiener failed to address. (*See, e.g.*, ECF No. 128, PageID.3346–3347, 3356.) Dr. Shiener's brief comments do not explain how he ruled in or out potential causes of Plaintiffs' condition, nor does he cite any sources in support his opinion. Plaintiffs do not provide any further explanation—either in their briefing or in Dr. Shiener's affidavit—for how this conclusory statement meets the standard set forth in *Tamraz*. While he is not required to deal with every possible cause of Plaintiffs' condition, Plaintiffs have the burden of establishing that Dr. Shiener engaged in a reliable process to reach his conclusions about causation. They do not do so. Accordingly, Dr. Shiener may not testify regarding the cause of Plaintiffs' conditions.

### d.   *Prognoses and Treatment Opinions*

Similar deficiencies afflict his opinions about the prognosis and proper treatment for Plaintiffs. With respect to each Plaintiff, Dr. Shiener opines that because of the persistence of their symptoms, there is "poor prognosis" for their recovery. (ECF No. 128-3, PageID.3380; ECF No. 128-4, PageID.3389; ECF No. 128-5, PageID.3398; ECF No. 128-6, PageID.3406.) He also expresses the view that each Plaintiff requires "supportive psychotherapy" and, possibly, "antidepressant medication."

23

(*Id.*) Dr. Shiener does not cite any scientific literature as a basis for these conclusions. He offers nothing of the "'how' and 'why'" behind his opinions regarding prognosis and treatment, which is an insufficient basis for an admissible expert opinion. *R.C. Olmstead, Inc.*, 606 F.3d at 271. Accordingly, Dr. Shiener's opinions regarding Plaintiffs' prognosis and treatment are inadmissible.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS Plaintiff Amanda Wilhelm, as Next Friend of M.S. Doe's Ex Parte Motion to Accept the Notarized Affidavit of Dr. Gerald Shiener, (ECF No. 151), and GRANTS IN PART and DENIES IN PART Defendants' Motion to Strike. (ECF No. 128.)

IT IS SO ORDERED.

Dated: March 10, 2025          s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 10, 2025.

                               s/William Barkholz
                               Case Manager